May it please the Court, Martin Buchanan appearing for the appellant, John Burke. This appeal arises from a 12B6 dismissal of a complaint against the owners and operators of TV Guide. The plaintiff is a subscriber to TV Guide who is suing on behalf of himself and other multiple-issue subscribers. Attached to the complaint are three examples of TV Guide subscription order forms. Each of those forms promises a specified number of issues, and two of those forms state in fine print that TV Guide issues a certain number of special or double issues each year and each special or double issue counts as two of 58 in an annual subscription. The core allegation of the complaint is paragraph 20. Paragraph 20 in essence alleges that what TV Guide is calling a double or special issue is in fact not a genuine double or special issue. So what is a special issue or a double issue? A double issue is... A special issue or a double issue. What is it? Let me take them one at a time. Okay. A double issue, and again this is a factual issue I think, that the question is what would a reasonable consumer understand a double or special issue to be? Is there any word of art? I mean is it recognized in the industry as meaning anything? There's no evidence of that anywhere in the record. All we have here is the complaint. So I think it's a factual issue and the district court erred by taking that issue away from a fact finder and deciding it as a matter of law. So your position is double can only mean if it doesn't have double the number of pages, is that it? It's a fraud? Well, again, I think it's a factual issue. Well, what's your position? It must have double the number of pages or the single issue? It must have double the number of pages or content. What if it's one page short? Well... It's a fraud. Each single issue is... If a single issue has 20 pages and a double issue has 39, that's an actionable fraud? I'm sorry, if a single issue has... If a single issue has 20, the double issue or the special issue has 39, that's an actionable fraud? No, that's probably close enough to double. Well, what does close enough mean? I mean now it's either double or it's not. So what's close enough? How about 38? Is that close enough? Again, Judge Trott, I think it's a factual issue for a fact finder. We have an... Is that what we're going to tell the jury, close enough? Is that the jury instruction? No, the jury instruction is that the jury is to determine what a reasonable consumer would understand the word double issue to mean. Now, a reasonable consumer probably wouldn't quibble over one page, as you're indicating. But a reasonable consumer would not understand the word double issue to mean a slightly expanded single issue, which is... What does slightly expanded mean? Well, all we have is the words of the complaint. We're dealing with the allegations of the complaint. The complaint says slightly expanded. So we don't know, based on this record, exactly what slightly expanded is. Could be a page, could be five pages, could be 20 pages. There's no evidence in the record at this point. But just as one page short of double is probably close enough to double, one page over single is not close enough to double. That can't be a double issue. A reasonable consumer would not understand the word double issue to mean one page or a few pages over a typical issue. Double means twice as much of something. So you're trying to get to summary judgment. We're trying to get beyond the pleadings to discovery. To summary. And ultimately, of course, to summary judgment or trial. But the way one proves whether an advertisement is likely to mislead the public under California law is through things such as a consumer survey, anecdotal evidence. We'd be entitled to present that type of factual evidence to prove that these advertisements are, in fact, misleading to the general public and to the average consumer. And by finding as a matter of law that the defendants did not make any misrepresentations as to either the content or the pages featured in double or special issues, the district court erred. Those phrases, double issues or special issues. If the district court did not err in this instance, you did ask for leave to amend. But I don't think where you indicated what you would amend to say. Well, I think on the leave to amend issue, Judge Reimer, that would go to whether we made our allegations with sufficient precision to allege a fraud. And in whatever way the complaint would be found lacking, it's our position it's not lacking at all. But we could certainly add more detail about exactly what representations were made when. We could attach more sample subscription forms and such if that's what the court finds is lacking. We believe we've satisfied the pleading requirements for a fraud and non-fraud claim. And there's no need to amend. Our core argument here is that the district court erroneously found no misrepresentation when a reasonable consumer could find that a double issue means double of something. That a special issue. See, when you say double of something, could it be double of cost? Double of color pages in the publication? Double the number of people that worked on it? Double of something? I think double means double the length or the substantive content. And by substantive content, I mean perhaps the number of substantive articles in the magazine or the number of words in the substantive articles. Again, we believe this is an issue of fact. The words double issue and special issue are obviously meant to distinguish somehow from a normal single issue, from a typical single issue. What if it's outside the normal publication? For instance, rather than monthly, it comes out weekly or something that would double the number of publications that are sent out in the time sequence. I mean, it's hard to determine when you say double of something what you're really expecting. Well, what the complaint alleges, it should be double the content or the pages. Now, again, really our argument is it's an issue of fact. It's not an issue that can be resolved on the pleadings. And perhaps double or special, perhaps those words are subject to different reasonable interpretations. But that makes it an issue of fact. That makes it an issue on which we should be allowed to present evidence, expert testimony, a consumer survey, anecdotal evidence. I think we're all struggling with what exactly it means, and that's exactly why it shouldn't be decided as a matter of law. So what's a special issue? Again, I think it's a factual issue, but special to me connotes something of a distinct kind or quality. So there's something special about the content of that issue that distinguishes it from your run-of-the-mill average TV guide. How about just being different? Pardon me? How about just being different? Well, they're all together. We talk about children with handicaps sometimes as special. I mean, don't we? Just being different sometimes is special. Well, every issue of TV guide is different. So then anything could be labeled as a special issue and counted twice and effectively billed for twice. And it seems to me that's not what a reasonable consumer would expect at all. So, again, these are all factual issues. You're asking me questions about what these words mean, and, you know, it's an issue about how a reasonable consumer would interpret them. And that's not something a district court can rule on as a matter of law based on the pleadings. That is our fundamental argument. With that, I'll reserve the rest of my time for rebuttal. Thank you, Counsel. Good morning, Your Honors. May it please the Court. My name is Danielle Oakley. I'm here on behalf of the respondent, Open Gate Capital. A counsel for my co-respondent is also here in the courtroom, but I'll be arguing on behalf of all the respondents. We're going to want to know what a double issue is or what a special issue is. I'll be happy to tell you what those double and special issues are. One thing I think is important to focus on is that what's at issue here is not just whether the term double issue is misleading. We have to look at the representation on a whole and in context. And what the representation at issue here is that, quote, TV Guide publishes up to 19 special or double issues a year. Each special or double issue counts as two of 58 issues in an annual subscription. So the definition of that is what TV Guide says it is. The definition of that, I suppose, Your Honor, is correct that it is what TV Guide says it is. I can provide a little bit of color about what those tend to look like, but I don't want to risk going beyond the pleadings. I think that's what's fair to keep in mind here. So your position is if I say it's a special issue, it's a special issue and it's all over. If I say it's a double issue and it's a double issue, it's all over because that's what I said.  I think that if the allegations in the complaint had said you told me I would get a special or a double issue and I've not gotten either of those things, then that might be an issue of fact. However, what the complaint has said and what the appellant's opening brief has said, the reply brief has said, you told me I would get a double issue and I didn't get what I considered to be a double issue. Well, why isn't that a fact issue? Because nobody knows what a reasonable consumer would have interpreted those words to mean. I mean, it could mean double content. It could mean double pages. It could mean just double up on issues. It could mean a lot of things. The response to that, Judge Reimer, is twofold. First is under the terms of the express contract and the disclosure that was on the face of all of the offers here, there is no obligation to provide a double issue whatsoever. And so under this particular contract, all 19 of those special or double issues could have been published as special issues. And had the appellant raised a concern about not getting something that he thought was validly represented to be a special issue, we might be in a trickier position here. However, he's not challenged in any way that the content of the special issues was deficient or was dissatisfactory to him, was contrary to what he or any other consumer would reasonably believe a special issue to be. Could a special issue be a two-page flyer that says, hi, this is a special issue? That's not what's been alleged has ever occurred. Could it be? Could it be? I mean, you put a label on it that's special. That's enough. That counts. I think that if that was something that had happened and that was something that the plaintiff was complaining about, then that might be an issue of fact. But we don't know yet, do we? I mean, this is just a 12B6. We don't have that level of detail yet. Isn't that what you get into after discovery and at summary judgment? Well, he's not alleged that anything like that has happened. And I don't think that he could because, quite frankly, that's not what goes into special issues. But he's not alleged any such thing. If he had, we might be at a place of a question of fact. The only fact issue he has raised, though, is what a consumer would believe a double issue to mean. And under the terms of the contract, there were no requirements to provide any double issues whatsoever. What does a double issue mean? A double issue can mean a number of different things. If you go out and purchase a double issue or a special issue, getting to the point of discovery, if discovery was what was lacking here, this appellant has been a subscriber of TV Guide for years and has received the very things of which he's complaining. So I don't think this is a lack of discovery issue. The special issues and the double issues tend to be exactly as my opposing counsel here has said that he would think a double issue to mean, denoting a distinct kind of quality. And what generally happens with the double or special issues is they're devoted to one particular program. There might be kind of a collector's edition of TV Guide that's focused on law and order and all of the actors who have been on that show. People collect TV Guides? I didn't know that. They sure do. You'd be surprised. They must have big houses. Have you ever seen the show Hoarders? If you enter into a contract with someone and say, all right, here's the deal. We're going to have so many issues, and some of them we're going to call special, and the ones we decide to call special get double credit. And the person says, okay, I'll accept that contract. What's wrong with that? Under the facts that you've just described, I don't believe that anything's wrong with that. And isn't that kind of what happened? TV Guide says, okay, we're going to give you so many issues a year. Some we're going to call special, and the ones we call special get double credit. That's right. That's the contract. That's the contract. That's what the appellant here accepted and, in fact, continued repeatedly throughout the class period to renew his subscription, notwithstanding that practice having been in place, as he alleges in the complaint throughout the entirety of the class period. I think Your Honor is exactly right. That's the contract he entered into. Those are the terms he agreed to. So to the extent that his complaint is, as it was more focused on below, that he didn't receive the number of issues he subscribed for, because he had subscribed for 114 and received a number less than that, because some of them counted as two issues, the express terms of the contract prevent there from being a breach in that scenario because they say, of the number of issues that you subscribe for, up to 19 per year will be double or special issues that count as two issues each. To the extent, as has been more the focus of the appeal, that the complaint is that you don't have double the pages or content, again, that neglects the fact that there's an entire category of issues here that are special issues with which the appellant has pleaded and has raised on appeal no beef, no complaint there. In terms of if we're focusing on the term double, putting aside the fact that there was no contractual obligation to provide anything that would constitute a double issue as opposed to a special issue, I think that the dialogue that you engaged in with my opposing counsel highlights the problem with trying to impose in this contract terms that were not written in by the parties. So to say double means precisely twice the number of words. Certainly the number of words in a single issue of TV Guide is not consistent across the board. To say that it means double precisely the number of pages, well, for five pages less, what does that mean? Does it mean double the amount of TV listings? Is it two weeks' worth of TV listings, in which case you might be in a scenario where you only have five more pages than the single issue? Is it double the number of pictures? If we're in a scenario where you've got a TV Guide that's a special issue or a double issue because it's dedicated to coverage of the royal wedding, is that content of double the value to a particular consumer? And for precisely the impossibility of determining those issues, that language is not built into the contract. What's in the contract is that you will receive up to 19 double or special issues, and each of those will count as two issues toward your subscription. Are you familiar with people who collect these TV Guides? I mean, are there like Mickey Mantle cards, the equivalent, or Roger Hornsby, or anybody who has the May 13, 1955 edition as a $5,000 special edition? I haven't heard of any particular issue of TV Guide attaining quite the value of a Mickey Mantle card, for example, so I'm not sure what they're holding out for there. Getting to the fraud claims, though, and moving away from just the breach of contract aspect, for the same reason there can't have been a breach here, there simply wasn't a false representation. Mr. Burke has not promised a specific number of pages of content, and to suggest that providing special issues of which he's taken no complaint here is a fraudulent conduct, I think certainly deserved to have been dismissed with prejudice at the outset. What about leave to amend? With respect to leave to amend, Judge Reimer, I think that leave to amend here would certainly have been futile, for a couple of different reasons. The first is that which I've already discussed, which is that the contract obligates no double issues whatsoever, and there's been no complaint with respect to the quality or the content of the special issues. Moreover, to be actionable under the fraudulent prong of the UCL, and I think that's where we get into kind of the issue of leave to amend, the statement has to have been likely to deceive a significant portion of the consuming public when acting reasonably has to have been potentially misled by the statement. When you look at the statement in its entirety and not just focus on the word double, because there was no obligation whatsoever or no representation in the statement that you would necessarily be receiving any of these double issues, it doesn't matter what you come back and plead with respect to the specific content of those double issues, you weren't entitled to receive a single one of them under the terms of the express contract, and there's no way you can plead around those express terms. Your time is waning. Do you have anything else you'd like to say to us? I don't, Your Honor. Thank you for your time. Thank you, counsel. We'll hear from you in rebuttal. A question I have is, you know, there's a bit of an atmospheric here. What's the actual damage that your client suffered in this case? How do you measure that? By the number of issues that the difference between the number of issues that he thought he was subscribing to and the numbers that he actually got based on the fact that the double or special issues were counted twice when they should only have been counted once. So what's the damage? Well, the damage to him would be not very much, obviously. What does not very much mean? I don't know the exact figure. Well, wait a minute. You filed a lawsuit. You can't tell me how much damage that your client suffered? Well, first of all, I'm just being helpful. You're just a what? I didn't file the lawsuit. Where does that get us? I'm just saying all I know is what's in the complaint, and I don't know how long he sits there. Are you like a hired hitman here? I mean, what is this all about? I mean, what's the damage your client suffered? I don't know the precise monetary value judgment. What do you think it is? I mean, you say he was supposed to get how many issues, in your view? Again, I don't know how many times he subscribed to TV Guide. The complaint says his most recent subscription was for 114 issues. And how many did he get, in your view, if you take these languages? You say it should be taken. Well, assuming that they're counting 19 out of 58 issues as double issues, that's approximately one-third of the number of issues they put out that they promised. So to me that means he didn't get one-third of the issues that he should have gotten. So what's his damage? It would be 114. Is this one of these cases where everybody who subscribes as a member of this class is going to get three coupons and the lawyers are going to get $3 million? The importance of the case is not so much the damages to the individual plaintiffs. It's the millions of dollars that the defendants have obtained as a result of their deceptive and unlawful false advertising. And the law cannot be that they can just slap a label on any issue of TV Guide and call it a double or special issue, and that then meets the reasonable expectations of a consumer. Well, how do you know the special issues aren't the ones that the collectors go for? And so by getting special issues, you're getting the equivalent of the Mickey Mantle cards. I just want to emphasize that we're not talking about one or two issues per year here. We're talking, by their account, 19 out of 58. So somebody who subscribes to 58 issues of TV Guide is actually only getting 39. Is there an eBay market for special issues? To my knowledge, there's no eBay market for special issues. To my knowledge, special issues are no more special than single issues. That's what our whole complaint is all about. And they have reaped millions and millions of dollars of profits by virtue of what is false advertising. And it cannot be determined as a matter of if there's anything that I think this argument has shown is that there is no fixed meaning of double or special issue, and it ought to be a matter subject to proof at trial according to the evidence we produce as to what a reasonable. At trial, the trial would be what? This is double issue, and then we go through this whole thing again, what you think a double issue is? Well, we have evidence. It wouldn't be just our speculating about what it means. And what would the evidence consist of? Experts from universities to talk about what a reasonable consumer would believe? Well, they would have to have a foundation for it, which would be some kind of consumer survey. That's how these things are proven under the false advertising law and the unfair competition law. Usually, a consumer survey is used. So you would have some kind of objective evidence of what this really means to consumers. Do you have that? I don't have that at this time, but we haven't gotten past the pleadings. So you start a lawsuit without knowing where you're going. Again, when I say I. Rule 11 requires a little more than that, doesn't it? I know, you're just the hit man hired for the argument. I don't know what trial counsel has judged trial. Okay. Thank you very much. Thank you very much. This case just argued is ordered and submitted.
judges: Beistline, Trott, Rymer